IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ABEL A. SALAZAR,

     Plaintiff,

vs.                                                                         Civ. No. 97-520 JC\LCS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

Proposed Findings

1.  This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand the
Administrative Decision, filed February 9, 1998.  The Commissioner denied Plaintiff's request for
disability insurance benefits.  Plaintiff alleges a disability due to an on the job back injury sustained
in February 1992.

2.  The Commissioner denied Plaintiff's application for benefits both initially and on
reconsideration.  After conducting an administrative hearing, the Commissioner's administrative
law judge (ALJ) likewise denied the applications.  The Appeals Council did not review the ALJ's
decision, thus the final decision of the Commissioner is the ALJ's decision.  Plaintiff now seeks
review of that final decision pursuant to 42 U.S.C. §405(g).

3.  The standard of review in social security appeals is whether the Commissioner's final
decision, in this case the ALJ's decision, is supported by substantial evidence.  **Thompson v.
Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the

1

Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  **Id**. (citation omitted).

4.  Plaintiff raises the following issues in his motion to reverse or remand:  1) a remand is necessary to consider new and material evidence (Exhibits B through L-attached to Plaintiff's Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision); 2) a remand is necessary to reassess whether the Plaintiff's impairments met the listings based upon the new and material evidence; 3) the ALJ did not support with substantial evidence nor did she properly apply the law when she found that the Plaintiff has a residual functional capacity (RFC) for light work; 4) the ALJ erred by failing to consider the Plaintiff's receipt of worker's compensation benefits; and 5) the ALJ erred by failing to disqualify herself from the case.

5.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  **Id**. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  To determine disability, the Commissioner has established a five step sequential evaluation process.  **Id**.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  **Id**. (citations omitted).

6.  The first four steps of the sequential evaluation process are not at issue in this case.  At step five, the burden shifts to the Commissioner to show that the claimant has an RFC to do work in the national economy other than past relevant work.  **Id**.  at 1487 (citations omitted).  The Medical-Vocational Guidelines (grids) are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national

economy at various RFC levels by incorporating administrative notice of occupational

publications and studies.  20 C.F.R. §§404.1566(d).  This aids the Commissioner in determining

what specific job types in the national economy the claimant can perform.  The grids assume that

the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part

404, Subpt. P, App. 2, §2000(e)(2).

7.  The Plaintiff argues first that this matter should be remanded so that the Commissioner

can consider additional new and material evidence, Exhibits B through L.  42 U.S.C. §405(g)

states that the Court "may at any time order additional evidence to be taken before the

Commissioner of Social Security, but only upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence into the record in

a prior proceeding...."  Evidence is "new" if it is not duplicative or cumulative.  **See, e.g., Bradley**

**v. Califano**, 573 F.2d 28, 31 (10th Cir. 1978).  Evidence is "material" to the determination of

disability if the new evidence would have changed the Commissioner's decision had it been before

him.  **Hargis v. Sullivan**, 945 F.2d 1482, 1493 (10th Cir. 1991). Moreover, proffered evidence

must be related to the time period for which the benefits were denied.  **Id**. (citing **Johnson v.**

**Heckler**, 767 F.2d 180, 183 (5th Cir. 1985)).  If the claimant believes his condition has

deteriorated since the ALJ's decision, he may wish to file a new application. **See, e.g., Godsey v.**

**Bowen**, 832 F.2d 443, 445 (7th Cir. 1987).

8.  Exhibit B is a complaint by the Plaintiff to the Board of Medical Examiner regarding

his treating physician, Dr. Stern.  The complaint is dated February 25, 1997.  The complaint states

that Dr. Stern did not adequately care for the Plaintiff after staples were removed from his back in

December 1996, almost a year and a half after the ALJ entered her decision.  The complaint also

3

documents a couple of incidents of rudeness on the part of Dr. Stern.  I find that the staples

incident does not relate to the time period the ALJ was considering.  Furthermore, I cannot find

that the rudeness episodes would have changed the ALJ's decision had it been before her.

Therefore, Exhibit B is not material.

9.  Exhibit C consists of medical records from Dr. Stern, dated January 17, 1994 to

December 18, 1996.  The records from January 17, 1994 to July 28, 1995 are not new medical

records, because they were in existence prior to the ALJ's July 28, 1995 decision.  Moreover, the

Plaintiff has not shown good cause for not submitting them prior to the ALJ's decision.  The

remaining records indicate that the Plaintiff underwent back surgery sometime after the

administrative hearing.  Even so, the August 21, 1995 report stated that the Plaintiff "was doing

very well" until August 6, 1995 when he went out for a walk.  Dr. Stern stated at that time that

"[i]t is difficult to know if the patient is being truthful.  The straight leg raising tests were

contradictory.  The moaning and groaning was quite dramatic; nevertheless, he may have a real

basis for his complaints and we will await Dr. Wellborn's EMG studies."[1]  On October 3, 1995,

Dr. Stern noted that he is "proud of this gentleman for doing well and coming through this well.

It indicates good moral character and a good outcome of the surgical treatment.  The patient may

be able to return to gainful employment because he is well motivated."  On January 8, 1996, Dr.

Stern observed that the Plaintiff's morale dropped because he found out that his former employer

would not take him back.  On February 9, 1996, Dr. Stern specified that the Plaintiff "may lift up

---

[1]The subsequent EMG study was "entirely normal."  Exhibit I.

4

to 10 pounds frequently, and up to 25 pounds occasionally."[2]  Then on May 10, 1996, Dr. Stern noted that the Plaintiff should "be able to return to his usual occupation 6-8 weeks from removal of hardware" from his back.  I find that these reports would not change the ALJ's initial determination that the Plaintiff can do light work during the relevant time period before the ALJ. Consequently, the reports are not material.

10.  Exhibit D contains medical records by Dr. McCutcheon, another treating physician. Those records are dated from January 5, 1997 to July 31, 1997.  On January 5, 1997, Dr. McCutcheon treated the Plaintiff for an infected spinal incision.  Dr. McCutcheon then started the Plaintiff on physical therapy.  On June 17, 1997, Dr. McCutcheon considered the Plaintiff to be disabled as a result of the back surgery and post-operative infection.  Dr. McCutcheon completed an RFC assessment in which he determined that the Plaintiff can sit, stand, or walk for an hour at a time for a total of two hours each in an eight hour day.  He also found that the Plaintiff can occasionally lift and carry items up to five pounds.  In response to a questionnaire, Dr. McCutcheon indicated that the Plaintiff is likely to suffer from significant pain, and is unable to work full-time at sedentary work.  Dr. McCutcheon's reports apply to the Plaintiff's physical condition after he suffered from a post-operative infection.  The infection and its resulting effect on the Plaintiff do not relate to the time period in question.  Thus, Dr. McCutcheon's reports are not material to this particular case.

11.  Exhibits E and F are reports by physical therapists.  Physical therapists are not listed as acceptable medical sources under the Social Security regulations, 20 C.F.R. §404.1513(a).

---

[2]Light work involves lifting frequently 10 pounds and lifting up to 20 pounds.  Soc. Sec. Ruling 83-10.

Accordingly, these reports would not have changed the ALJ's final decision.  They are not material.

12.   Exhibit G contains the medical records from Presbyterian hospital dating from July 7, 1994 to January 1, 10, 1997.  These records indicate a facet injection in September 1994.  They also show that hardware was removed in December 1996.  The remaining records concern the subsequent infection detected in January 1997.  The Plaintiff does not provide good cause why the September 1994 report was not previously presented to the ALJ.  As discussed above, the infection reports do not relate to the period of time before the ALJ and so are not material.

13.   Exhibit H contains the medical records from Eastern New Mexico Medical Center, dated from August 7, 1994 to May 14, 1997.  These records document emergency room visits prior to and subsequent to the Plaintiff's 1996 hardware removal.  They also contain the initial diagnosis of the post-operative infection in January 1997.  Again, these reports relate to the infection and not the relevant time period.  Therefore, these reports are not material.

14.   Exhibit I consists of the medical record from Dr. Wellborn, dated September 7, 1995.  Dr. Wellborn performed an electrophysiological examination the result of which was "entirely normal."  This evidence would not change the ALJ's decision.  It is, therefore, not material to this case.

15.   Exhibit J consists of a medical report from El Camino Imagining, dated August 21, 1995.  In the report, the radiologist concluded that there is "evidence of some degenerative disc disease at L3-4 with a small central disc protrusion.  The cause of the patient's right lower extremity symptoms is not identified."  This report does not add much if anything to the record already before the ALJ.  **See** Tr. 78, 81, 131, 137 (evidence of degenerative disc disease or

herniated disc).  Consequently, I find that Exhibit J is not material.

16.  Exhibit K contains medical records from Dr. Gutierrez and Dr. Turner.  Those records are dated from July 29, 1993 to July 14, 1993.  Exhibit L is a medical report from Dr. Mora, dated June 22, 1994. These records and report were in existence well before the administrative hearing took place on December 20, 1994.  The Plaintiff does not provide good cause for failing to introduce these documents into the record at the administrative hearing.  In conclusion, I find that the evidence the Plaintiff wants presented to the Commissioner upon remand does not meet the requirements for the introduction of additional evidence under 42 U.S.C. §405(g).  Rather, this is the type of situation where a new application is appropriate in order to determine disability resulting from the post-operative infection.

17.  The Plaintiff next argues that the additional new and material evidence requires an assessment of listing §1.04(c) on remand. This argument necessarily fails since I have concluded that it is impermissible to introduce the additional evidence upon remand.

18.  The Plaintiff also contends that the ALJ's RFC determination was improper considering the evidence before the ALJ.[3]  The Plaintiff supports this contention with several sub-arguments. The Plaintiff argues first that the ALJ erred by relying on the unacceptable medical evidence of a physician's assistant.  **See** 20 C.F.R. §404.1513.  The Plaintiff specifically argues that Dr. Stern's reports were not prepared by him but by his physician's assistant.  Dr. Stern's reports state that they were dictated by his physician's assistant.  At the end of the reports is a signature line for Dr. Stern.  These circumstances are insufficient to suggest that the physician's

---

[3]Although the Plaintiff bases this contention on the evidence before the ALJ, he nonetheless at times cites to the additional evidence found in Exhibits B-L.  I will examine this argument only on the evidence before the ALJ.

assistant actually conducted the examinations and wrote Dr. Stern's reports.  I, therefore, find that the unacceptable medical evidence argument is without merit.

19.  The Plaintiff further argues that one of Dr. Stern's reports contains terminology which may be inconsistent with that used by the Social Security Administration in describing one's RFC.  Social Security Ruling 96-5p states that "[a]djudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms."  The language at issue is found in Dr. Stern's statement that the Plaintiff "should be released to work at least in the light to medium work category."  Tr. 118.  There being no specific evidence of the Plaintiff's ability to lift, sit, walk, and stand, the ALJ appears to rely on Dr. Stern's statement in concluding that the Plaintiff has an RFC for light work.  Tr. 14-16.  This is improper under Social Security Ruling 96-5p.  Consequently, this matter should be remanded for a proper RFC determination.

20.  The Plaintiff also contends that the ALJ disregarded the opinion of Dr. Moon who found that the Plaintiff could not return to his work as a machine operator or heavy work laborer.  Tr. 77.  The Plaintiff is correct.  The ALJ does not mention Dr. Moon's statement.  Even so, the ALJ concluded, as Dr. Moon did, that the Plaintiff could not return to his past work as a machine operator.  Tr. 17. Accordingly, I find that the ALJ committed harmless error in her failure to mention Dr. Moon's statement.

21.  Next, the Plaintiff argues that the ALJ failed to consider objective medical evidence when he determined that "although the medical evidence itself is insufficient to discount his testimony, it does show that he does not have any impairment reasonably capable of producing the symptomatology alleged."  Tr. 15.  To analyze properly a claimant's assertion of disabling

8

pain, the ALJ must first determine whether the claimant has established by objective medical evidence that he has a pain-producing impairment.  **Musgrave v. Sullivan**, 966 F.2d 1371, 1375-76 (10th Cir. 1992)(citing **Luna v. Bowen**, 834 F.2d 161, 163-64 (10th Cir. 1987)).  If the claimant establishes a pain-producing impairment, then the ALJ must consider whether there is a "loose nexus" between the proven impairment and the subjective allegation of pain.  **Id**.  If the ALJ finds that there is a "loose nexus," the ALJ must decide whether after considering all of the objective and subjective evidence, the claimant's pain is in fact disabling.  **Id**. At this point, "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations."  **Luna**, 834 F.2d at 165.

22.  In this case, there is objective evidence of disc degeneration or herniated disc. Tr. 78, 81, 131, 137.  The ALJ concedes that there are "few objective findings" and that the "medical evidence itself is insufficient to discount [Plaintiff's] testimony."  Tr. 15-16.  The ALJ then goes on to find that the symptom magnification evidence and other normal examinations lead her to conclude that the Plaintiff is not credible.  **Id**.  Although not as detailed or explicit as the Plaintiff would like it to be, I find that the ALJ's pain analysis is sufficient to comply with **Luna**.[4]

23.  The Plaintiff contends that the ALJ erred when he mechanically applied the grids because of his nonexertional impairments of pain and need to alternate sitting and standing.  An ALJ may rely on the grids when evaluating non-exertional impairment if plaintiff's testimony is not entirely credible.  **Williams v. Bowen**, 844 F.2d 748, 755 (10th Cir. 1988) (credibility

---

[4]The Plaintiff also complains that the ALJ did not consider the physical capabilities reported to Dr. Moon which were consistent with the Plaintiff's testimony.  Little significance can be attributed to the reported physical capabilities, because they are subjective in nature.

determinations are province of ALJ), **cited in Castellano v. Sec'y of HHS**, 26 F.3d 1027, 1029

(10th Cir. 1994). That is the situation here. Consequently, the ALJ did not err in applying the

grids in a mechanical fashion.

24. Next, the Plaintiff argues that the ALJ erred in her failure to assess the Plaintiff's

receipt of worker's compensation. Specifically, the Plaintiff asserts that the ALJ did not consider

the Plaintiff's receipt of worker's compensation as required by **Baca v. Dept. of HHS**, 5 F.3d 476

(10th Cir. 1993). In **Baca v. Department of Health and Human Services**, 5 F.3d 476, 480

(10th Cir. 1993) the Court of Appeals held that the Commissioner must consider the disability

findings of other agencies. The Plaintiff also takes issue with the ALJ's statement that the

Plaintiff "has continued throughout the entire history of medical treatment to demonstrate illness

behavior for gain." Tr. 15. I agree with the Plaintiff. The ALJ erred when she failed to consider

the receipt of worker's compensation benefits. Moreover, the ALJ's statement regarding "illness

behavior for gain" is speculative and not supported by substantial evidence. **See Caldwell v.**

**Sullivan**, 736 F.Supp. 1076, 1081 (D.Kan. 1990)(one's financial status is not indicative of

motivation to work). Accordingly, this matter should be remanded for proper consideration of

the worker's compensation benefits.

25. Lastly, the Plaintiff asserts that the ALJ should have disqualified herself from hearing

the case. Apparently, the ALJ had represented the wife of the Plaintiff's counsel, Mr. Campos, in

a divorce proceeding. Tr. 6. At the administrative hearing, Mr. Campos stated that "[w]e had a

case where we were in opposition. I don't know that you even recall that or if that makes any

difference[.]" Tr. 185. The ALJ replied that she did not recall the case and that it must have been

a long time ago. **Id**. Mr. Campos agreed that it had been a while ago and that they should "leave

it at that." **Id**.  These statements and the fact that there is no evidence of bias presented by the

Plaintiff leads me to conclude that the ALJ did not err when she did not disqualify herself from

hearing the case.

Recommended Disposition

I recommend granting the Plaintiff's Motion to Reverse or Remand the Administrative

Decision in part.  Specifically, I recommend remanding this matter to the Commissioner so that he

shall properly determine the Plaintiff's RFC and consider the receipt of worker's compensation

benefits.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).

Within ten days after a party is served with a copy of these proposed findings and

recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such

proposed findings and recommendations.  A party must file any objections within the ten day

period allowed if that party wants to have appellate review of the proposed findings and

recommendations.  If no objections are filed, no appellate review will be allowed.

_____
Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE